# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:18 cv 6

| | |
|---|---|
| **CARLOS RODEIA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| **BILTMORE FOREST COUNTRY CLUB** ) | |
| **INC.,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Before the Court are Defendant's Motions to Dismiss. [# 19, # 21]. On January 8, 2018, Defendant filed a Notice of Removal and included a copy of the summons and original complaint. [# 1 Ex. # 1, # 2]. On April 6, 2018, Plaintiff filed his Amended Complaint alleging age discrimination and retaliation, in violation of 29 U.S.C. § 621, *et seq.*; wrongful discharge, in violation of N.C. GEN. STAT. 143-422.2; intentional infliction of emotional distress; and negligent infliction of emotional distress. [# 18]. On April 20, 2018, Defendant filed both Motions to Dismiss. [# 19, # 21]. The District Court referred the motions to this Court. Accordingly, Defendant's motions are now before this Court for a Memorandum and Recommendation to the District Court. The Court will recommend that the District Court grant both of Defendant's Motions to Dismiss.

**I.     Factual Background**

Plaintiff is Carolos Rodeia, a 61-year-old male of Portuguese descent who has been diagnosed with depression, anxiety, and "alcohol use disorder." [Am. Compl. ¶¶ 3, 5].

Plaintiff is a resident of Buncombe County, North Carolina. [Id. at ¶ 3]. Defendant is Biltmore Forest Country Club, Inc. (BFCC), a corporation headquartered in Asheville, North Carolina. [Id. at ¶ 4].

Beginning in October 2002, Defendant employed Plaintiff as a server and manager in its Men's Grill. [Id. at ¶ 6]. For many years Plaintiff was an excellent employee with little exception. [Id. at ¶ 7]. In early 2015, Defendant hired Hunter Cosgrove, a Caucasian male in his late twenties. [Id. at ¶ 8]. Cosgrove worked as a locker room supervisor. [Am. Compl. ¶ 8]. Cosgrove harassed, belittled, and treated Plaintiff in a "discriminatory manner." [Id. at ¶ 9]. Plaintiff reported Cosgrove to his supervisor John Rector and to Defendant's Human Resources (HR). [Id. at ¶ 10]. HR took no corrective action. [Id.]. Throughout 2015, Cosgrove's behavior continued. [Id. at ¶ 11].

In December 2015, HR reprimanded Plaintiff for "behavior that his Caucasian and younger colleagues also engaged in yet escaped punishment." [Id. at ¶ 12]. Additionally, Plaintiff was given extra work and denied any support; Plaintiff's Caucasian and younger colleagues were not treated this way. [Am. Compl. ¶ 13].

In February 2016, Defendant gave Cosgrove supervisory authority over Randy Smith. [Id. at ¶ 14]. Previously, Smith would assist Plaintiff when Plaintiff was overworked and understaffed. [Id.]. Once Cosgrove began supervising Smith, Cosgrove "intentionally and maliciously" prevented Smith from assisting Plaintiff. [Am. Compl. ¶ 15]. In May 2016, Plaintiff's work-related stress and anxiety began to interfere with his sleeping and eating habits. [Id. at ¶ 16].

On July 18, 2016, a coworker of Plaintiff berated Plaintiff for duplicating work. [Id.

2

at ¶ 17]. General manager Calvin J. Bolling Jr. witnessed the event. [Id. at ¶ 18]. Bolling high-fived the coworker, which Plaintiff states gave "tacit approval of [the coworker's] inappropriate conduct toward Plaintiff." [Id.]. Bolling did not defuse the situation. [Id.]. Bolling did not treat Plaintiff's Caucasian and younger colleagues this way. [Am. Compl. ¶ 18].

On July 25, 2016, Plaintiff received treatment for his workplace anxiety. [Id. at ¶ 19]. Plaintiff was prescribed medication. [Id.]. From July 29 to August 6, 2016, Plaintiff took a vacation in an attempt to assuage his anxiety. [Id. at ¶ 20]. Upon returning, Plaintiff found his work situation unchanged. [Id.]. On August 20, 2016, Plaintiff succumbed to pressure and intentionally cut himself at work. [Id. at ¶ 21]. Plaintiff states he cut himself due to his "anxiety, depression, and stress due to the continued discrimination." [Am. Compl. ¶ 21]. The injury did not require surgery or stitches. [Id. at ¶ 22].

Following the injury, Plaintiff was treated at Mission Hospital Copestone for anxiety, depression, and related issues for 11 days. [Id. at ¶ 23]. Then, Plaintiff attended four sessions of an employee assistance counseling program. [Id.]. While in residence at Mission Hospital Copestone, Dr. Gerry Travis, president of the Board of BFCC, visited Plaintiff. [Id. at ¶ 24]. Plaintiff had not requested Travis visit him. [Id. at ¶ 25]. Plaintiff overheard Travis discussing Plaintiff's medical condition with the attending physician, including Plaintiff's anxiety, depression, and alcohol abuse disorder. [Am. Compl. ¶ 26]. Travis had no legitimate purpose for visiting Plaintiff and asking about Plaintiff's medical conditions. [Id.].

On September 7, 2016, Plaintiff returned to work and again found his work situation

remained unchanged. [Id. at ¶ 27]. Hunter Cosgrove continued to "discriminate against" Plaintiff. [Id.]. Defendant did not discuss or offer a reasonable accommodation to Plaintiff. [Id. ¶ 28]. Plaintiff states that at a minimum Defendant could have removed Cosgrove and Plaintiff from each other's work environment. [Id. ¶ 29].

On January 4, 2017, Plaintiff received a negative performance review. [Am. Compl. ¶ 30]. It was the first negative review in Plaintiff's fourteen years working for Defendant. [Id.]. Plaintiff states he acknowledged the review only because he did not fully understand it due to his limited English ability. [Id. at ¶ 31]. After taking the review home to analyze it with his wife, Plaintiff wrote a rebuttal and submitted it to his supervisor. [Id.].

On March 10, 2017, Cosgrove harassed Plaintiff about how to do his job. [Id. at ¶ 32]. Plaintiff asked Cosgrove to leave several times. [Id.]. Cosgrove refused. [Am. Compl. ¶ 32]. This precipitated a verbal confrontation. [Id.]. Immediately thereafter, Cosgrove reported the incident to general manager Bolling. [Id. at ¶ 33]. Plaintiff was suspended and ultimately terminated. [Id.]. Cosgrove was neither suspended nor terminated. [Id.]. Plaintiff alleges that Defendant has now turned to targeting other older employees. [Id. at ¶ 34].

On June 15, 2017, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC). [Am. Compl. ¶ 35]. Plaintiff attached a copy of the charge and incorporated it into the Amended Complaint as Exhibit 1. [# 18 Ex. 1]. On September 6, 2017, the EEOC issued Plaintiff a Right to Sue letter. [Am. Compl. ¶ 36].

## II. Legal Standard

**Federal Rule of Civil Procedure 12(b)(1).** A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter

jurisdiction to hear the dispute. Fed. R. Civ. P. 12(b)(1). Where a defendant contends a complaint fails to allege facts upon which the court can base subject matter jurisdiction, the court, like ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), assumes as true the factual allegations in the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). If the defendant further contends that the jurisdictional allegations contained in the complaint are false, the court may go beyond the allegations of the complaint and conduct an evidentiary hearing in order to determine if there are facts to support the court's exercise of jurisdiction over the dispute. Id. The burden of establishing subject matter jurisdiction on a motion to dismiss rests with the party asserting jurisdiction. Id.; Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

**Federal Rule of Civil Procedure 12(b)(6).** The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. *See* Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190–92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; *see also* Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007); *see also*

5

Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; *see also* Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. *See also* Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

### III. Analysis

#### A. Age Discrimination in Violation of the Age Discrimination in Employment Act

Defendant moves to dismiss Plaintiff's age discrimination claim, pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, because Plaintiff has failed to state a claim for which relief can be granted.

Under the ADEA, an employer is prohibited from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA defines a member of its protected class as an individual at least 40 years old at the time the alleged discriminatory act occurs. 29 U.S.C. § 631(a). To establish a claim under the ADEA, a plaintiff may rely on either direct evidence of discriminatory intent or indirect evidence established through the adapted inferential proof scheme announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* Miles v. Dell, Inc., 429 F.3d 480, 485–89 (4th Cir. 2005) (discussing *McDonnell Douglas* and the prima facie case for ADEA claims); Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (acknowledging that discriminatory intent based on age can be demonstrated by direct or indirect evidence), *cert. denied*, 520 U.S. 1116 (1997).

Under *McDonnell Douglas*, the Court notes a plaintiff's eventual factual burden, or prima facie case, is (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA. *See* Burns, 96 F.3d at 731. On a motion to dismiss a claim of discrimination, however, courts do not require plaintiffs to "plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." McClearly-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584–85 (4th Cir. 2015) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002)). Rather, a plaintiff is only required to allege enough facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Plaintiff's Assertions. Numerous times Plaintiff alleges that Cosgrove acted toward

7

Plaintiff in a 'discriminatory manner.' [Am. Compl. ¶¶ 9, 20, 27]. Plaintiff never states what Cosgrove's specific actions were beyond the few examples outlined below. Thus, the Court has no guidance on what the actions were and how they were discriminatory and based on age. Plaintiff also states Defendant's HR started treating him disparately. [Id. at ¶¶ 11–12]. Again, Plaintiff does not elaborate only stating he was reprimanded for behavior "that his Caucasian and younger colleagues also engaged in yet escaped punishment." [Id. at ¶ 12].

Plaintiff's Examples. Amidst these bald assertions, Plaintiff gives examples Defendant's 'discriminatory' behavior: Plaintiff was given extra work; Cosgrove denied Plaintiff support staff; Plaintiff was yelled at by a colleague for duplicating work, which was tacitly approved of by general manager Bolling; Plaintiff and Cosgrove entered into a heated argument that led to Plaintiff being suspended and terminated and not Cosgrove. When looking at the bare facts, and not Plaintiff's characterizations, the Court does not see how these examples could lead to a claim of age discrimination above the speculative level.

As it reads without characterization, Plaintiff had an interpersonal problem with Cosgrove and reported it to HR. HR did not respond. Plaintiff and Cosgrove continued to have issues. Another employee yelled at Plaintiff but not related to discrimination or age— but because Plaintiff was doing a job incorrectly. A manager approved of Plaintiff being yelled at by a coworker. Plaintiff and Cosgrove's problems escalated to its peak with Cosgrove and Plaintiff arguing about how Plaintiff was doing his job. Plaintiff was fired, Cosgrove was not.

Plaintiff attempts to get his claim across the pleadings requirement line by including

8

at various times in various iterations of: "Plaintiff's younger and Caucasian colleagues were not treated in a similarly discriminatory manner." [*See e.g*, Am. Compl. ¶ 13]. This, however, does not cure Plaintiff's lack of facts. Because the Court cannot "draw reasonable inference that the [D]efendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, the Court will recommend the District Court grant Defendant's Motion to Dismiss at to Plaintiff's age discrimination claim.

**B. Retaliation in Violation of the Age Discrimination in Employment Act**

Defendant moves to dismiss Plaintiff's retaliation claim because Plaintiff has failed to exhaust his administrative remedies. In claims under the ADEA, a failure to exhaust administrative remedies deprives a district court of subject matter jurisdiction over the claim. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009); *see* 29 U.S.C. § 626(c). Thus, regarding this claim, Defendant bases its motion to dismiss on Fed. R. Civ. P. 12(b)(1).

The ADEA prohibits employment discrimination on the basis of retaliation of a protected action. The ADEA requires that before filing a civil action alleging a violation of the ADEA, a person must first exhaust administrative remedies by filing a charge of discrimination with the EEOC. 29 U.S.C. § 626(d); Jones, 551 F.3d at 300. Any subsequent civil action after filing a charge with the EEOC is limited to the contents of the charge. Jones, 551 F.3d at 300. "Only those discrimination claims stated in the initial charge, those reasonable related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). "[A] claim in

9

formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones, 551 F.3d at 300.

Upon reviewing Plaintiff's EEOC charge, it appears the charge only alleges age discrimination. [# 18 Ex. 1]. Further, the accompanying narrative alleges nothing in regard to Defendant retaliating against Plaintiff for a **protected action**. [Id.]; *see generally* EEOC Notice No. 915.004, EEOC ENFORCEMENT GUIDANCE ON RETALIATION AND RELATED ISSUES (2016) (clarifying and defining retaliation under the law).

Further, looking to Plaintiff's Amended Complaint, the Court also finds Plaintiff has failed to allege that Plaintiff engaged in a protected action. Plaintiff states Cosgrove "harassed" and "belittled" Plaintiff in a "discriminatory manner." [Am. Compl. ¶ 9]. This bald statement does not outline to the Court: 1) what Cosgrove actually did that was harassment or belittlement; and 2) how those actions were discriminatory based on Plaintiff' **age**. Thus, the Court cannot infer oppositional conduct regarding *age* when Plaintiff told his supervisor or HR about Cosgrove's treatment of Plaintiff. Essentially, Plaintiff does not allege enough facts that show Defendant was aware of the alleged discriminatory behavior based on age and therefore acted one way or the other in response to it.

Therefore, the Court finds Plaintiff's retaliation claim is not reasonably related to the allegations of the EEOC charge. *See* Miles, 429 F.3d at 492. And even if it were related, Plaintiff has failed to state a claim of retaliation in his Amended Complaint.

Thus, it appears Plaintiff has failed to exhaust his administrative remedies regarding

10

his retaliation claim. This Court, therefore, lacks subject matter jurisdiction over this claim. Accordingly, the Court will recommend the District Court grant Defendant's Motion to Dismiss at to Plaintiff's retaliation claim under the ADEA.

### C. Wrongful Discharge in Violation of Public Policy, N.C. GEN. STAT. § 143-422.2

Plaintiff bring his claim of wrongful discharge in violation of public policy through N.C. GEN. STAT. § 143-422.2—the North Carolina Equal Employment Practices Act (NCEEPA). North Carolina only recognizes wrongful discharge claims under NCEEPA. Further, North Carolina has expressly refused to acknowledge a common-law private cause of action for discrimination without termination of employment. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) ("Neither the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA. Instead, most courts have applied the NCEEPA only to common law wrongful discharge claims or in connection with other specific statutory remedies."); *see also* Dewitt v. Mecklenburg Cty., 73 F. Supp. 2d 589, 604–05 (W.D.N.C. 1999) (discussing that the public policy exception only allows plaintiffs to proceed in "specific, very narrowly defined circumstances" and plaintiffs have only been permitted to recover for wrongful discharge claims, rather than general disparate treatment or hostile work environment claims); Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 687 (M.D.N.C. 1997).

In this case, Plaintiff argues Defendant violated N.C. GEN. STAT. § 168A-1, *et seq.*, or North Carolina's Persons with Disabilities Protection Act (PDPA), when Defendant terminated Plaintiff. Because Plaintiff believes Defendant has violated the PDPA, Plaintiff uses that as a basis for his claim of wrongful discharge in violation of public policy claim

11

under the NCEEPA.

Under the PDPA, in order for Plaintiff to successfully bring forth his claim of "wrongful discharge in violation of public policy, plaintiff need[s] to plead sufficient facts to establish that []he qualifies as a disabled person under the statute." Clark v. United Emergency Servs., Inc., No. COA07–592, 2008 WL 1723229, at *7 (N.C. Ct. App. Apr. 15, 2008) (citing Burgess v. Your House of Raleigh, Inc., 388 S.E.2d 134, 137 (N.C. 1990)). "A person with a disability "means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." Id. (quoting N.C. GEN. STAT. § 168A–3(7a)(b)). The PDPA defines "Physical or mental impairment" in relevant part as

> any mental disorder, such as . . . mental illness . . . but [] excludes . . . any disorder, condition, or disfigurement which is temporary in nature, lasting six months or fewer, and leaving no residual impairment. A disorder, condition, or disfigurement that is episodic or in remission is a physical or mental impairment if it would substantially limit a major life activity when active.

N.C. GEN. STAT. § 168A–3(7a)(a).

Under the PDPA, "Major life activities" includes "eating," "sleeping," and "working." N.C. GEN. STAT. § 168A–3(7a)(b).

The PDPA defines "Has a record of such an impairment" as having "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits major life activities." N.C. GEN. STAT. § 168A–3(7a)(c).

Plaintiff states he has been diagnosed with depression, anxiety, and alcohol use

12

disorder. In May 2016, due to stress and anxiety Plaintiff's sleeping and eating were affected. Reading the Amended Complaint in the best light for Plaintiff, the Court infers that Plaintiff's issues with eating and sleeping continued until at least his termination on or around March 10, 2017. This means at a minimum Plaintiff's impairments continued to affect his sleeping and eating for 9 to 10 months.

Additionally, the Court finds Plaintiff has pled facts that show this his mental impairments affected his work. Plaintiff sought treatment for his anxiety and depression. Plaintiff took a vacation. Plaintiff intentionally cut himself at work due to his mental impairments. Plaintiff spent 11 days in-patient at Mission Hospital Copestone. Plaintiff attended four sessions of an employee assistance program. In calculating how long Plaintiff's work was affected by his impairments, Plaintiff cut himself at work on August 20, 2016. This means a minimum Plaintiff's impairments affected his work for 6 months and 18 days.

The Court does not find Plaintiff has pled facts that show his eating and sleeping were *substantially* affected by his impairments. *See* Clark, 2008 WL 1723229, *8. The Court, however, finds Plaintiff has alleged enough facts to allege his work was substantially affected by his impairments. *See* id. (discussing Campbell v. N.C. Dep't of Transp., 575 S.E.2d 54, 60 (N.C. Ct. App. 2003)). *But cf.* Simmons v. Chemol Corp., 528 S.E.2d 368, 370–71 (N.C. Ct. App. 2000) (finding a plaintiff had a temporary impairment at *summary judgment*). Further, reading the Amended Complaint in Plaintiff's favor, the Court finds Plaintiff's work was affected for at least 6 months.

Yet, Plaintiff's PDPA wrongful discharge claim fails. Under the PDPA, it is a

13

discriminatory practice for "[a]n employer to . . . discharge . . . a qualified person with a disability *on the basis of* a disabling condition with respect to compensation or the terms, conditions, or privileges of employment." N.C. GEN. STAT. § 168A–5(a)(1) (emphasis added). Plaintiff has not alleged facts that support a claim that he was terminated because of his mental impairments or on the basis of a disabling condition.

From the Amended Complaint, it appears Plaintiff and Cosgrove had an argument after Cosgrove told Plaintiff how to do his job. Plaintiff did not allege Cosgrove knew of Plaintiff's mental impairments. Subsequently, Plaintiff was fired by general manger Bolling. Plaintiff did not allege that Bolling or HR knew of his mental impairments and fired him because of his mental impairments. In fact, it appears that Plaintiff was fired because of the verbal confrontation. Plaintiff does allege that Dr. Gerry Travis—President of the Board of BFCC—visited him while Plaintiff was in Mission Hospital Copestone and learned about Plaintiff's condition. Yet, this allegation is not enough to shore up Plaintiff's claim for wrongful discharge *because of* Plaintiff's mental impairments.

Because Plaintiff has not alleged enough facts for a wrongful discharge claim under the PDPA, Plaintiff's claim of wrongful discharge in violation of public policy, under the NCEEPA must fail. Accordingly, the Court will recommend the District Court grant Defendant's Motion to Dismiss as to Plaintiff's NCEEPA claim.

### D. Intentional Infliction of Emotional Distress

Plaintiff's fourth claim is for intentional infliction of emotional distress (IIED). [Am. Compl. ¶¶ 56–61]. In order to satisfy a claim for IIED in North Carolina, a plaintiff must allege facts demonstrating: "1) extreme and outrageous conduct by the defendant 2)

which is intended to and does in fact cause 3) severe emotional distress." Holloway v. Wachovia Bank & Trust Co., N.A., 452 S.E.2d 233, 240 (N.C. 1994) (quoting Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981)); Guthrie v. Conroy, 567 S.E.2d 403, 408 (N.C. Ct. App. 2002). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Guthrie, 567 S.E.2d at 408–09 (quoting Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985) *cert. denied*, 332 S.E.2d 479 (N.C. 1985)); *see also* Johnson v. Colonial Life & Accident Ins. Co., 618 S.E.2d 867, 872 (N.C. Ct. App. 2005). Whether or not conduct constitutes the type of extreme and outrageous conduct that could give rise to an intentional infliction of emotional distress claim is a question of law. Johnson, 618 S.E.2d at 872–73; *see* Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000).

The North Carolina courts have circumscribed the level required by law to qualify as "outrageous" conduct. The conduct must be "atrocious, and utterly intolerable in civilized community." Guthrie, 567 S.E.2d at 408–09. This differs from "behavior universally regarded as inappropriate and abhorrent." Oritz v. Big Bear Events, LLC, 3:12-CV-341-RJC-DCK, 2013 WL 247444, at*4 (W.D.N.C. Jan. 23, 2013).

Plaintiff's claim fails at step one. Plaintiff's allegations of Defendant's behavior do not rise to the level of outrageous conduct. While harassment at work and perceived disparate treatment are inappropriate and maybe even abhorrent, they are not actions that rise to the level of outrageous. *See* Frazier v. First Union Nat'l Bank, 747 F. Supp. 1540, 1553–55 (W.D.N.C. 1990).

15

Therefore, the Court will recommend the District Court grant Defendant's Motion to Dismiss as to Plaintiff's claim of IIED.

### E. Negligent Infliction of Emotional Distress

Plaintiff's final claim alleges negligent infliction of emotional distress (NEID). [Am. Compl. ¶¶ 62–66]. To satisfy this claim, a plaintiff must allege "that defendant (1) negligently engaged in conduct, (2) which was reasonably foreseeable would cause severe emotional distress and (3) the conduct did, in fact cause severe emotional distress." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990). Negligence is a requirement of the first prong. *See* id. at 97. "Negligence is the breach of a legal duty owed by defendant that proximately causes injury to plaintiff." Guthrie, 567 S.E.2d at 410.

Plaintiff alleges Defendant had a duty to protect Plaintiff from the "extreme harassment" and "discriminatory treatment" inflicted upon him. [Am. Compl. ¶ 63]. In North Carolina, however, "[a]n employer is not an insurer of his employee's safety, but he does have a duty to exercise ordinary care to provide his employee with a reasonably safe place to work." Whitaker v. Blackburn, 266 S.E.2d 763, 765 (N.C. Ct. App. 1980) (citing Gaither v. E. H. Clement, 111 S.E. 782, 783 (N.C. 1922)).

Construing the facts in favor Plaintiff, the Court finds Defendant had a duty to exercise ordinary care to provide Plaintiff with a reasonably safe place to work. Plaintiff, however, has not stated facts that support Defendant breaching this duty. The contemplated duty appears to relate to workplace physical safety rather than the mental health of its employees. Yet, even construed in favor of the latter, Plaintiff's claim fails because the

16

duty only requires a *reasonably* safe place to work. Further, the Court finds Plaintiff has not alleged it was reasonably foreseeable to Defendant that by not acting on Plaintiff's complaints that Plaintiff would suffer *severe* emotional distress.

Accordingly, the Court will recommend the District Court grant Defendant's Motion to dismiss as to Plaintiff's claim of NEID.

In the alternative, the Court will recommend the District Court decline to exercise supplemental jurisdiction over all of Plaintiff's state law claims. *See* Campbell-McCormick, Inc. v. Oliver, 874 F.3d 390, 398 (4th Cir. 2017); 28 U.S.C. § 1367(c).

## IV. Conclusion

The Court **RECOMMENDS** the District Court **GRANT** both of Defendant's Motions to Dismiss [# 19, # 21] and dismiss Plaintiff's federal and state law claims. In the alternative, the Court **RECOMMENDS** the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

Signed: May 29, 2018

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208 (1984).